IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Latonya Grasper, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 24 C 6022 |
| v. | ) | |
| | ) | Judge Jorge L. Alonso |
| Among Friends Adult Day Care, Inc., | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Latonya Grasper worked as a program aide for Defendant until she was terminated on April 1, 2024. Following her termination, Grasper brought this lawsuit alleging violations of the Americans with Disabilities Act ("ADA"). Defendant now moves for summary judgment. For the reasons stated below, Defendant's motion is denied in part and granted in part.

**Legal Standard**

Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. *Horton v. Pobjecky*, 883 F.3d 941, 948 (7th Cir. 2018). A genuine dispute as to any material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). "[S]peculation is not enough to create a genuine issue of fact for the purposes of summary judgment." *Tousis v. Billiot*, 84 F.4th 692, 696 (7th Cir. 2023) (citations omitted). Rather, the parties must support their arguments by citing particular parts of the record, including depositions, documents, declarations, and stipulations. *Horton*, 883 F.3d at 948. The Court views the facts and draws all reasonable inferences in the light most favorable to the nonmovant. *Id.*

## Background

In December 2019, Defendant hired Grasper to work as a program aide. R. 36 ¶ 4. Grasper worked as a program aide from December 2019 through April 2024, and her normal work hours were from 8:30AM to 4:30PM, Monday to Friday. *Id.* ¶¶ 6–9. As relevant, Grasper's supervisor was Chernija Martin, and her director was Jacquelyn Hill. *Id.* There is no dispute that Grasper was qualified to perform the essential functions of her job. *Id.* ¶ 5.

On Monday, March 18, 2024, Grasper woke up with neck and back pain. *Id.* ¶ 12. Grasper texted Martin that she would not be coming into work that day. *Id.* ¶ 15. Grasper went to a hospital to receive medical care. *Id.* ¶ 14. While at the hospital, Grasper was informed that she suffered from neck arthritis. R. 39 ¶ 1. Grasper then texted Martin that she would be returning to work on Wednesday, March 20 as the doctor had ordered. R. 36 ¶ 18. Martin replied: "Okay. [Hill] said once everything is settled, make sure you bring in your paperwork." *Id.* ¶ 19. On Wednesday morning, Grasper texted Martin that she was still in a lot of pain and was going back to the doctor. *Id.* ¶ 20. Martin did not respond to this text message. *Id.* ¶ 21. Grasper then saw Dr. Liggons on Friday, March 22. *Id.* ¶ 23. Grasper spoke by telephone with Hill on Monday, March 25 and informed Hill that she had to see another doctor on Thursday, March 28. *Id.* ¶ 24. On Thursday, Grasper saw Dr. Barnes who cleared Grasper to return to work. *Id.* ¶ 27. Grasper returned to work on Monday, April 1 and brought medical documents to provide to Hill. *Id.* ¶ 26. When Grasper returned to work, however, Hill informed Grasper that Grasper had been terminated and that her position had been filled by a replacement during Grasper's absence. *Id.* Grasper was unable to provide Hill with the medical documents because Grasper was immediately terminated upon her return to work. *Id.* ¶ 44. In her deposition, Hill testified that she terminated Grasper because Hill had assumed that Grasper had abandoned the job. R. 29-4 at 6–7.

**Discussion**

**1. Count I (Discrimination) & Count II (Failure to Accommodate)**

"To establish a violation of the ADA, an employee must show: 1) that she is disabled; 2) that she is otherwise qualified to perform the essential functions of the job with or without reasonable accommodation; and 3) that the employer took an adverse job action against her because of her disability or failed to make a reasonable accommodation." *Winsley v. Cook Cnty.*, 563 F.3d 598, 603 (7th Cir. 2009) (citations omitted). In seeking summary judgment on Count I and Count II, Defendant does not dispute the first two elements, that Grasper's neck arthritis was a disability and that Grasper was qualified to perform the essential functions of the job. *See* R. 28. Rather, Defendant makes two arguments concerning the third element. First, that it "was reasonable for [Hill] to conclude that [Grasper] had abandoned her job," and that there "is no evidence that [Grasper's] employment was terminated for any reason other than job abandonment." R. 28 at 2–3. Second, that Grasper "never requested leave because of her medical condition," and because Grasper never requested an accommodation, Defendant could not possibly have failed to make an accommodation. *Id.* at 2.

Regarding Defendant's first argument, Grasper texted Martin on March 18 that Grasper was suffering from pain and would not be coming into work until March 20. Then, on March 20, Grasper texted Martin again to say that she was still unable to come into work. Finally, on March 25, Grasper spoke with Hill by telephone and informed Hill that she would be seeing a doctor on March 28. Grasper was out for just two weeks, from March 18 to April 1. In that time period, Grasper communicated three times with Defendant regarding her neck and back pain. Drawing all reasonable inferences in Grasper's favor, the Court is unable to conclude at summary judgment that it "was reasonable for [Hill] to conclude that [Grasper] had abandoned the job" and thus that

3

Grasper was terminated for job abandonment. Indeed, drawing all reasonable inferences in Grasper's favor, the facts suggest the opposite—Grasper maintained consistent communication with Defendant, thus indicating her intent to return to work as soon as she was able.

Regarding Defendant's second argument, "a plaintiff must normally request an accommodation before liability under the ADA attaches." *Jovanovic v. In-Sink-Erator Div. of Emerson Elec. Co.*, 201 F.3d 894, 899 (7th Cir. 2000). Indeed, an "employee has the initial duty to inform the employer of a disability before ADA liability may be triggered for failure to provide accommodations." *Beck v. Univ. of Wisconsin Bd. of Regents*, 75 F.3d 1130, 1134 (7th Cir. 1996). That said, the ADA "envision[s] an interactive process that requires participation by both parties." *Id.* at 1135. Ultimately, "both parties bear responsibility for determining what accommodation is necessary" and this "requires a great deal of communication between the employee and employer." *Bultemeyer v. Fort Wayne Cmty. Sch.*, 100 F.3d 1281, 1285 (7th Cir. 1996). Here, when Grasper returned to work on April 1, Hill had already hired a replacement—clearly, the parties failed to communicate. The responsibility for that failure does not lie squarely with Grasper. Defendant argues that Grasper should have made a formal request for medical leave. R. 28 at 2. But as Grasper's situation evolved day by day, Grasper provided Defendant with updates on three occasions, and each time, Grasper requested additional days at home for recovery. Martin failed to text Grasper back on March 20 and both Martin and Hill had Grasper's contact information. Either of them could have called Grasper to follow up regarding a timeline for Grasper's return to work. Drawing all reasonable inferences in Grasper's favor, Grasper met her duty to inform Defendant of her disability, sufficient for liability to attach under the ADA.

For these reasons, Defendant's motion for summary judgment is denied as to Count I and Count II, and Grasper may proceed on these claims.

### 2. Count III (Harassment)

To state a claim for harassment, a "plaintiff must demonstrate that (1) she was subject to unwelcome harassment; (2) the harassment was based on her disability or age or another protected category; (3) the harassment was sufficiently severe or pervasive, both subjectively and objectively, so as to alter the conditions of her employment and create a hostile or abusive atmosphere; and (4) there is a basis for employer liability." *Brooks v. Avancez*, 39 F.4th 424, 441 (7th Cir. 2022). A work environment is hostile when "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Id*. "Insults, personal animosity, and juvenile behavior are insufficient evidence of a hostile work environment unless they are so pervasive or severe as to interfere with an employee's work performance." *Id.*

Grasper argues that she was harassed because Defendant failed to accommodate her needs and terminated her "immediately upon her return to work." R. 43 at 7–8. But these facts are insufficient to show harassment. Grasper is unable to identify a single example of intimidation, ridicule or insult, let alone a confluence of issues so pervasive or severe as to interfere with her work performance. For these reasons, Defendant's motion for summary judgment is granted as to Count III and Count III is dismissed.

### 3. Count IV (Retaliation)

In its motion for summary judgment, Defendant argues that Grasper is not entitled to a jury trial on the ADA retaliation claim because the claim is equitable in nature. R. 28 at 6. In its reply, Defendant argues additionally that Grasper failed to establish the retaliation claim. R. 38 at 5–7. Because "arguments raised for the first time in [a] reply brief are waived," *White v. United States*, 8 F.4th 547, 552 (7th Cir. 2021), the Court addresses only the jury issue.

It is true that for an ADA retaliation claim, the "only remedies" that a plaintiff is "entitled to seek [are] equitable in nature." *Kramer v. Banc of Am. Sec., LLC*, 355 F.3d 961, 966 (7th Cir. 2004) (compensatory and punitive damages not available for ADA retaliation claim). Thus, "there is no right to a jury" for an ADA retaliation claim "where the only remedies sought (or available) are equitable." *Id.* However, when "legal and equitable claims are joined in the same action," as is the case here, "the right to jury trial on the legal claim, including all issues common to both claims, remains intact." *Lytle v. Household Mfg., Inc.*, 494 U.S. 545, 550 (1990) (citations omitted).

The Court thus rules as follows: Grasper is allowed to proceed on Counts I, II, and IV. Grasper is entitled to a jury trial on Counts I and II, and on all issues of fact common to Count IV. Following the jury trial, the Court will determine any outstanding issues and damages related to Count IV.

4. **Damage Computations**

Under the Federal Rules of Civil Procedure, a party must provide "a computation of each category of damages claimed." Fed. R. Civ. P. 26(a)(1)(A)(iii). "All too often plaintiffs do not comply with [26(a)(1)(A)(iii)] . . . even though [damages] are as critical a component of a case as is proof of liability." *Kramer v. Am. Bank & Tr. Co., N.A.*, 2015 WL 13735745, at *2 (N.D. Ill. Aug. 17, 2015). If a party fails to comply with discovery obligations, "the sanction imposed must be proportionate to the circumstances." *Collins v. Illinois*, 554 F.3d 693, 696 (7th Cir. 2009).

Here, Grasper failed to provide damage computations. *See* R. 29-6 at 2. And Defendant seeks dismissal of the case as a sanction. R. 28 at 4–6. But this is a straightforward case with easy-to-imagine theories for computing damages, and the Court finds that dismissal would be disproportionate. The Court thus sanctions Grasper as follows: at trial, Grasper is only entitled to seek damages that were clearly foreseeable based on the evidence produced during discovery.

**Conclusion**

For the reasons stated above, Defendant's motion [27] for summary judgment is denied in part and granted in part. Grasper may proceed on Counts I, II, and IV. Count III is dismissed. By 11/25/25, Plaintiff shall provide Defendant with complete damage computations. At trial, Plaintiff will not be permitted to seek damages not included on this list. By 12/9/25, Defendant shall respond to Plaintiff with objections to any computations that Defendant believes were not clearly foreseeable based on the evidence produced during discovery. If the parties cannot reach an agreement as to whether certain computations were clearly foreseeable, they shall indicate their positions in a joint status report before the Court. The parties shall file a joint status report by 12/16/25 setting forth the following: A) whether, in light of the Court's ruling, the parties wish to engage in settlement discussions prior to trial; B) any disagreements related to damage computations; and C) the anticipated length of the trial.

**SO ORDERED.**                                   ENTERED: November 14, 2025

**HON. JORGE L. ALONSO**
**United States District Judge**